WILLIAM H. EDSALL

v.

HENRY W. MERRILL and JOHN O'BRIEN.

A tenant in common who prevents his cotenants from obtaining from the premises held in common their just shares of the income the premises are capable of yielding, or who takes possession of the whole, and uses them as his own, and thereby makes a profit, is bound to account to his cotenants, either for the rental value of the premises, or the profit he has made.

On final hearing on bill and answer and proofs taken before a master.

*Mr. John Linn*, for complainant.

*Mr. John C. Merrill*, of Easton, Pa., and *Mr. Charles F. Fitch*, for defendants.

VAN FLEET, V. C.

This is an action for an account. It is brought by one tenant in common against two others. The complainant holds an undivided fourth, and the defendants three-eighths each, or three-fourths together. The lands held in common consist of a small tract, containing about five acres, situate in the township of Franklin, in the county of Warren. At the time the parties acquired their respective titles, the lands were supposed to contain a large deposit of mica, and that a mine could be opened and worked successfully. In April, 1872, within a month after their purchase, the defendants took possession of the lands, opened a mine, and between that time and the November following, took out about six thousand pounds of mica and then abandoned work, because they found they could not realize money enough from the product of the mine to pay for working it. Neither party since then has worked the mine. The complainant asks that the defendants shall be required to account, and he seeks to

have them charged with the whole quantity of mica mined, whether a market has been found for it or not, or whether it can be sold or not, and he also insists that no compensation should be allowed to the defendants for their personal labor and service, but, like copartners, they should be required to look alone to the profits for their compensation.

The relation between the parties was that of tenants in common and nothing more. The complainant embarked nothing in the venture; he contributed neither money, skill nor labor. He says he offered to pay his share of the expenses of working the mine, but both defendants swear that no such offer was made to them. There were no contract relations between the parties. The complainant is entitled to what the law gives him as a tenant in common, but that is the limit of his right.

The right of a tenant in common, out of possession, to require the tenant in possession to account, is a purely statutory regulation. The common law recognizes no such right. *Wheeler* v. *Horne, Willes 208; Sturton* v. *Richardson, 13 Mees. & W. 17; Henderson* v. *Eason, 17 Ad. & E. (N. S.) 701.* Our statute, which is a transcript of *4 Anne c. 16* § *27*, declares that one tenant in common may maintain an action of account against another, as bailiff, for receiving more than comes to his or her just share or proportion. *Rev. p. 4* § *3.* The courts of queen's bench and exchequer chamber differ as to the meaning of this statute. The queen's bench hold that the statute was intended to prescribe a rule for the division of rents, issues and profits among tenants in common, and should be applied as well where the proceeds of the land are received in kind as to a case where a money rent is received. It was also held that, *prima facie,* the whole profits must be taken to be more than the just share of the tenant in possession, and that his receipt of them constituted him bailiff for his cotenants. *Eason* v. *Henderson, 12 Ad. & E. (N. S.) 986.* On the presentation of the same question to the exchequer chamber, by writ of error in the case just cited, it was held there that the statute was meant to apply only to cases where the premises held in common are rented, and one of the tenants receives the whole rent. Baron Parke, in delivering the judgment of the

court, said : " There are many cases where profits are made, and are actually taken by one cotenant, and yet it is impossible to say that he has received more than comes to his just share.  For instance, one tenant in common employs his capital and industry in cultivating the whole of a piece of land, the subject of the tenancy, in a mode in which the money and labor expended greatly exceed the value of the rent or compensation for the mere occupation of the land ; in raising hops, for example, which is a very hazardous adventure.  He takes the whole of the crops ; and is he to be accountable for any of the profits in such a case, when it is clear that, if the speculation had been a losing one altogether, he could not have called for a moiety of the losses, as he would have been enabled to do had it been so cultivated by the mutual agreement of the cotenants ?  The risk of the cultivation, and the profits and loss are his own ; and what is just with respect to the very uncertain and expensive crop of hops, is just also with respect to all the · produce of the land, *fructus industriales*, which are raised by the capital and industry of the occupier, and would not exist without it.  In taking all that produce he cannot be said to receive more than his just share and proportion." *Henderson* v. *Eason, 17 Ad. & E. (N. S.) 701, 718.* The interpetation given to the statute by the exchequer chamber is the construction, as I understand, now prevailing in England.

This court has adopted a construction rather more liberal to the tenants out of possession.  We hold, as the English courts do, that where one of several tenants occupies simply as tenant in common, and not to the exclusion of the others, he is not liable to account.  But we also hold that an exclusion may occur where there is no express refusal, by the tenant in possession, to allow the others to occupy, as where one of several tenants takes possession of premises which are not capable of joint occupancy ; in that case his occupation is an exclusion of the others.  *Davidson* v. *Thompson, 7 C. E. Gr. 83.*  So, too, this court holds that if the tenant in possession refuses to join his cotenants in an advantageous lease, and thus deprives them of all income from the premises, he is chargeable with a reasonable rent.  *Izard* v. *Bodine, 3 Stock. 403.*  And on like principle it has been held that

Edsall v. Merrill.

where one of several tenants in common cultivates the whole of the lands held in common, and takes the entire product to himself and makes a profit, he must account to his cotenants for their share of the profit. *Barrell* v. *Barrell, 10 C. E. Gr. 173; Buckelew* v. *Snedeker, 12 C. E. Gr. 82.* The principle adopted may be stated as follows : Where the tenant in possession has prevented his cotenants from obtaining from the premises such profits as they were capable of yielding, or has taken possession of the whole, and used them as his own, and thereby made a profit, he must account either for their fair rental value, or the profits.

In this case, the complainant alleges that the defendants, by opening a mine on the subject of the tenancy, and working it, have made large profits, and he claims that he is entitled to one-fourth of them. He does not ask that the defendants be required to account for the rental value of the premises, nor attempt to show that their use of them was such as to exclude him from a like use, but what he wants is a share of the profits which he alleges the defendants, by their use of the premises, have made. Now, in a case like this, where two of the tenants in common have provided all the capital of the venture, done all the work and furnished all the skill, it would be neither accurate nor just, in ascertaining what sum represented the profits, in order that a just division of them might be made among all the tenants, to leave out of the computation the value of the labor and services of those who incurred all the risk. According to the English rule, those who incur the risk are entitled to all the profits, as they must bear the whole loss if the venture is unsuccessful. That rule seems to me to be both sensible and just. The tenant who keeps aloof and free from risk until the hazards have all been run and the dangers are all passed, and then comes forward seeking to share in the profits of a venture he had not the courage to join, and to the success of which he has contributed nothing, certainly is not in a position to demand that the court, in ascertaining what the profits are, shall be cautious almost to niggardliness towards those whose capacity and enterprise have made the venture a success. The defendants were under no duty, legal

or moral, to give the complainant their time and services; he had no right to either. The venture was theirs; if unsuccessful, he could not be made to bear any part of the loss; if successful, the utmost, I think, he could be permitted to claim would be his just share of the net gains, and they represent simply what remains, after deducting everything that went into the cost of production, preparing the mica for market and selling it. Stating the account between these parties, according to this rule, there were no profits, on the contrary, a loss; consequently the complainant is not entitled to a decree. His bill must be dismissed, with costs.